The first case on the call of the docket is number 121281, Aspen v. Interstate, Agenda No. 14. Helen, if you're ready, thank you. Thank you. You may proceed. May it please the court, counsel. My name is Kimberly Jansen, and I am pleased to be here today representing the defendant, Interstate Warehousing. The primary issue before the court in this appeal is simply whether the doing business test for establishing a general personal jurisdiction in Illinois survived the United States Supreme Court's 2014 decision in Dynamore v. Dynamore. Now, even prior to Dynamore, the United States Supreme Court held in Goodyear that the proper test of general personal jurisdiction is where a corporation is essentially at home. Dynamore clarified, to the extent that there was some remaining confusion, that the essentially at home test is not synonymous with the doing business test that had long prevailed in Illinois as well as in, I think, virtually every jurisdiction across the United States. The doing business standard that had been predicated on a corporation's systematic, continuous, and substantial course of business in a foreign state was explicitly projected by the Dynamore court as unacceptably grasping. So what does it mean to be at home in a forum for purposes of general personal jurisdiction? The Dynamore court explained that at home for a corporation is a forum equivalent to the domicile for an individual, and it identified two paradigm bases for jurisdiction, the state of incorporation and the principal place of business. The court went on to say that although general personal jurisdiction would not necessarily be limited to those paradigm forums, only in an exceptional case would the court recognize general personal jurisdiction in a forum other than those two paradigm forums. Federal circuit courts that have addressed the exceptional case requirement have described it as a heavy burden for a plaintiff to meet to establish an exceptional case, one that would be incredibly difficult to establish, and one that would require a plaintiff to meet stringent criteria set forth in Dynamore. And the exemplar that the court cited for an exceptional case was the Perkins v. Benguet case, in which although the foreign corporation was a Philippine corporation, it was temporarily doing business in Ohio because the Philippines were occupied during World War II by the Japanese. Undoubtedly an extreme and exceptional case. That's the type of fact pattern that a plaintiff has to show to establish personal jurisdiction over a defendant that is not incorporated in Illinois and that does not have its principal place of business in Illinois. Can a corporation be subject to general jurisdiction in multiple jurisdictions? Certainly the two jurisdictions that the court identified, the principal place of business and the state of incorporation, so that there are at least two forms. If, you know, in the situations where a corporation might incorporate one state and maintain its principal place of business in another, it could arguably be subject to personal jurisdiction in both. But the court explained that the purpose of the jurisdictional rules is to create simplicity, to create predictability. Corporations should be able to structure their primary conduct in a way that allows them to identify in advance where they will be subject to jurisdiction. And the benefit of selecting, especially at home testing, identifying the paradigm forms the court indicated, was that it created a limited set of locations where a corporation would be subject to jurisdiction. Ordinarily, each of those paradigm forms is only one place. And the court was clear that, you know, a corporation, as many corporations in today's economy do, a corporation that does business in many states cannot be at home in all of them. There has to be a limited and, in general, a unique place where a corporation is considered to be at home. It was also well established, of course, that the plain affairs burden of presenting a prima facie case for jurisdiction. And Aspen did not do that in this case. In its complaint, the only facts that it alleged that even somewhat go toward the issue of a facility in or near Chicago, we know that to be the Joliet Warehouse that is operated by its affiliate. They allege that it conducts business in Cook County, and I believe that should more accurately be Will County, because I think they're referring to the Joliet Warehouse. And they allege that Interstate does business within the state of Illinois, but also that Interstate does business outside of the state of Illinois. Those allegations are plainly to satisfy a prima facie case for personal jurisdiction. May I ask a procedural question? Was there any jurisdictional discovery done in this case? There was not. Was it requested? It was not requested. And because of that, there's fairly limited evidence in terms of the nature or extent of the Interstate's operations in Illinois, in Indiana, in Ohio, in Virginia, a number of states where Interstate has affiliated warehouses. So we know that they operate in a number of states. We don't have any specific details about the volume of the business or things like that. We do know that... Who has the burden of showing the jurisdiction's property in Illinois or another state? The plaintiff does. So in our motion to dismiss, we did present evidence to establish that Interstate is incorporated in Indiana, and that it also has its principal place of business in Indiana. So based on that, we clearly, the plaintiff cannot establish a paradigm basis for jurisdiction under NYDA. And the plaintiff did not produce any evidence to establish that this was an exceptional case that would warrant the exercise of jurisdiction outside of those paradigm forms. As Justice Heist noted, there was no jurisdictional discovery conducted. The plaintiff presented no evidence regarding the nature or extent of Interstate's operations in Illinois or anywhere else. It relied fairly heavily on simply the fact that Interstate is registered to do business in Illinois, to transact business, more precisely, under the statute. But of course, we know under the Illinois Long-Arm Statute that the transaction of business in Illinois is sufficient only with respect to specific jurisdiction, not general jurisdiction. And I think the standard is fairly clear. It's the plaintiff's burden to establish the prima facie case. We know that the prima facie case requires some showing that the defendant is essentially at home in the form. Alternatively, it requires some showing that outside of the paradigm basis, that there's an exceptional case warranting the exercise of jurisdiction outside of the place of incorporation or principal place of business. We know that that analysis requires an appraisal of the defendant's operations nationwide and not much evidence is in the record. Counsel, your quarrel is not with the fact that the appellate court shifted the burden to you. Your quarrel is the first piece of that, that they never established a prima facie case under Dymark. My quarrel is honestly with both of those points. First, I believe the appellate court wrongly concluded that there was a prima facie case established. The appellate court's reasoning relied on doing business standards, continuous systematic business context analysis, which has been explicitly rejected by Dymark. But then the court also did improperly shift the burden with respect to jurisdiction to us by holding that jurisdiction was proper simply because interstate did not produce evidence regarding its national operations. Okay. So you're saying that the procedure would not be, even if the appellate court, your position is they didn't understand Dymark in the first instance. But your position also is that there is at no point, even if they had understood Dymark, using your argument, and thought a prima facie case was established, there's no burden shifting at all. That the defendant doesn't have to do anything. Not until the plaintiff has established a prima facie case. Okay. All right. Gotcha. So if the court has no further questions, I believe that's sufficient grounds to reverse the appellate court and reverse the trial court in this case. Seeing none, thank you. May it please the court. My name is Timothy McGovern and I represent Aston American Insurance in Manhattan. We ask the court to affirm the decision as well. In contrast to what counsel said, there is more than adequate evidence in this case to establish a prima facie, a first look, jurisdiction under whether it's Dymark, Goodyear, or Russell versus SFMA. At that point, the burden did shift. The defendant had to do something. They had to present some evidence. And in this case, it did not happen. Mr. McGovern, before we get there, though, was there anything exceptional about defendants' contacts with the Illinois that would bring this case under Dymark? Well, I think there is. What's the exception? I think the exceptions here are the very exceptions that the Goodyear court denied jurisdiction for. And I'll read you a short quote from Goodyear to explain it, if your Honor will allow it. In the Goodyear case, the court stated petitioners are not registered to do business in North Carolina. They have no place of business, employees, bank accounts. They did not design, manufacture, or advertise their products in North Carolina. They did not solicit business in North Carolina. In our case, we have the exact opposite. We have a company that is authorized to transact business in Illinois. We have a company that has an employee in Illinois, operational divisions that report to that employee in Illinois, day-to-day operations in Illinois, and advertising for the facilities and services provided within Illinois. So the very reason the Goodyear court, which Dymark and Russell both relied on for the at-home standard, the very reason the Goodyear court denied jurisdiction over Goodyear, all those issues are present in our case here. And that's why there is a prima facie case, which at that point the burden shifts, and interstate warehousing had to do something. What does at-home mean, then? At-home? At-home means that a court considered them sufficient to be almost a domicile. And in this case, the only evidence in this record, in this supporting record, is that business conducted by interstate warehousing, other than their incorporation in corporate offices, is in Illinois. But don't they also have warehouses in Ohio, Colorado, Michigan, Tennessee, Indiana, and Virginia? Are they all at home as well? We don't have any evidence that there's employees there. We don't have any evidence of day-to-day services and operations there. We don't have any evidence of operational divisions there. And that information is solely within the possession of interstate warehousing. We don't have that information. And no discovery was done. Well, that's true, Your Honor. And in this case, the defendant filed a motion to dismiss its supporting affidavits from Jeff Hastings, the treasurer, which established operations within the state of Illinois. And they also submitted an affidavit from Ryan Schaffer. Ryan Schaffer is the general manager and interstate warehousing employee in Illinois who works there on a daily basis, receives the reports, and conducts facilities there for a company that has been operating in Illinois for close to 30 years now. So under the test, under Goodyear, which is what Dinah relied on, which is what Russell relied on, there is the prime occasion case. Now, that doesn't mean that the inquiry is over for the court. But the defendant at that point had some duty to come forward with evidence that they were  So your theory here is really specifically about burden shifting, that if you show that this company is doing business in Illinois, that's sufficient to shift the burden to the defendant. Is that correct? No, I think it goes beyond that, Your Honor. It's not just doing business. It's a volume of business. Well, I guess volume is a broken word, but a quantum of business such that we know it's operational provisions, we know that there are employees here, taxes paid. It's all this information together, which gives us the first look at the prime occasion, what the weather jurisdiction is. I hope I've answered your question. It sounds like it. But specifically, it's the burden piece that you're really concerned about, that you showed enough to shift the burden. And again, my question is, no one requested any kind of jurisdictional discovery. And I bring that up because in almost every one of the cases I've read, there was jurisdictional discovery. That's true, Your Honor. And I think had the defendant not provided all this information, be it the affidavit testimony of Ryan Schaffer and Jeff Hastings, that would have been our next move. But once they presented us with that evidence, we had established all these factors that were necessary in order to give the court the first look to determine jurisdiction. At that point, we had made our arguments, they could have come to the court at any point and said, Your Honor, we want to present additional evidence to conduct discovery. And they did not do that. They did not do that. It seems that the first seven pages of your brief are making a prime occasion case.  Is that the prime occasion showing that's sufficient or is it that it's the whole statement? It's the whole. All of the evidence together, Your Honor, has to be considered. And the evidence in this record is limited specifically to business in Illinois because the defendant didn't come forward with evidence of business outside of Illinois. So the only evidence in this record is that interstate warehousing has significant operations in Illinois. And corporation and principal place of business outside of it. It's very similar to the Perkins case, as we argued in the brief, where Perkins was sued for a situation that occurred outside of the state, but they were found to be subject to general jurisdiction. And it's not similar to Daimler factually. It's not similar to Goodyear factually. It's not similar to Helicopteros, which is noted by Goodyear on a factual basis. In all those cases, the foreign corporation had very limited contact with the foreign state. In all of those cases, there was no authorization to transact with us. In all those cases, there was very limited contact. But in our case here, the evidence in this record says that there is continuous, systematic daily operations within the state of Illinois. And that's the only operations we know of in this record. Mr. McGovern, though, we do know that the defendant is incorporated in Indiana, and that's the principal place of business, but the accident actually took place in Michigan. That's true. That's true, Your Honor. And as we indicated in the statement of facts, the warehouse in Michigan is gone. It's destroyed. It doesn't exist anymore. So there's nothing left there as far as evidence to the case. Except the accident took place there. I'm sorry? The accident took place there. That's true, Your Honor. The physical evidence is all gone. Illinois has the physical presence of the defendant and also our witness, James Goetz, who is named within the complaint for our exploitation claims. He is here in Illinois. So we do have witnesses here in Illinois, and the defendant has a presence here in Illinois. So Illinois does have connections that are available in order to go forward with the case. Just please clarify this for me. If we accept that Daimler set a different standard, a new standard, which relies on a state of incorporation and principal place of business, do you need to make a prime official showing of that, or are you claiming you need to make only a prime official showing that they do business in Illinois? No, I think that Daimler requires, well, Daimler tells us explicitly, and Goetz here did, and Russell tells us, that state of incorporation and principal place of business are not the only places where we can afford to have general jurisdiction. And specific to this case, this court can say that Interstate Warehousing is at home because of the significant contacts, not just because they do business here. I think Daimler tells us that that's not what is going to be allowed. But the contacts here are sufficient to render Interstate Warehousing at home. And the supporting record in our case shows that the business, the operations, the facilities that they pay for this record are all here in Illinois. It's a significant presence to be easily interpreted as at home, which the appellate court and the trial court did in this case. Is it up to this court? Is it as easy as being up to this court to just decide whether or not the appellate majority or the dissent got it right with respect to this exact issue? And what I mean by this is it seems the appellate majority, they lift a quote from Daimler that basically says that corporations affiliation within the state must be so continuous and systematic as to render it essentially at home in the forum state. And they utilize that to develop a prima facie case. And these two statements can't be right. The dissent says Daimler rejected the argument that general jurisdiction was appropriate whenever a corporation engaged in substantial, continuous, and systematic course of business in a state. They can't both be right, right? I mean, they're diametrically opposed. Is it this court's job to just look at that and decide whether Daimler said what the dissent said or Daimler said what the majority said? Or do we have to go further than that? No, I don't think that's this court's job. I think this court's job is similar to the appellate's court job in that the appellate court did vote that language from Daimler, which is from Goodyear in previous cases, which is an important statement of law for jurisdiction to be sure. But the appellate court recognized that the factual circumstances of this case, and they noted specific facts, including the authorization to transact business. They quoted the affidavits of Jeff Hastings and Ryan Schaffer verbatim within their opinion. And I think the appellate court, in doing so, was making a statement that based on these facts, the at-home standard of Daimler has been satisfied. And so in the dissent opinion, I think that Her Honor, she failed to see that the body of the facts in the supporting record in this case satisfied the burden required under Daimler, Goodyear, and Russell v. SFA. And so for this court, we would ask that the opinion of the appellate court, the majority opinion, be affirmed because of the factual record here. So the dissent in saying that Daimler rejected the standard of essential and substantial continuous and systematic course of business in a state, you're saying even if we agree with that concept, or that position by the dissent, that the at-home status was still satisfied? Absolutely, Your Honor. That's absolutely true. Your Honor, if any more of Your Honors has questions, I'll be happy to answer them. Otherwise, we have to report to the department, to the appellate court, and the trial court. Thank you. Thank you, Mr. McGovern. Goodbye. And I'll be very brief. Councils essentially argue that the magnitude of interstates, Illinois contacts, are sufficient to establish that it is, or at least sufficient to create a prima facie case that it is at home in Illinois without anything further. But in Daimler, the court specifically said, and I'm quoting, nothing in International Shoe and its progeny suggests that a particular quantum of local activity should give a state authority over a far larger quantum of activity having no connection to any in-state activity. Daimler has explicitly rejected the contention that a corporation's in-state contacts, no matter what the magnitude, can, without anything more, be sufficient to establish a prima facie case for jurisdiction. The argument that this case is dramatically different from Daimler in terms of the magnitude and scope of contacts is simply not supported by the facts in Daimler. In Daimler, the court was looking at a corporation and including the California subsidiary's contacts to Daimler. So for that purpose, the Mercedes-Benz USA contacts were included to Daimler, and that corporation was plainly present in California. It had multiple California-based facilities, a regional office in Costa Mesa, a vehicle preparation center in Carson, and a classic center in Irvine. It was the largest supplier of luxury vehicles to the California market. Surely, those contacts were sufficient in a substantial magnitude, but Daimler said that's not what we mean by at home. A test that looks only to whether a corporation has substantial, continuous, and systematic contacts is unacceptably grasping. The plaintiff has to show that the corporation is at home, is incorporated in Illinois, or has its principal place of business in Illinois, or that there's an exceptional case like that in Perkins where, although not formally incorporated or holding its principal place in business, it has established a surrogate principal place of business in the United States. The plaintiff specifically has not met that burden. The court has no further questions. I would ask that the decision be lowered in reverse. Thank you, Ms. Johnson. Thank you. Case number 121281, Aspen American Insurance Company v. Interstate Warehousing, will be taken under advisement as agenda number 14. Ms. Johnson, Mr. McGovern, thank you for your arguments. You are excused at this time.